COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-06-074-CR

 

 

JOHNNY SOLESBEE                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 235TH DISTRICT COURT OF COOKE COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------








After a jury convicted
Appellant Johnny Solesbee of the manufacture of a controlled substance,
methamphetamine, the trial court sentenced him to twenty-five years= confinement in the Institutional Division of the Texas Department of
Criminal Justice.  In one point, Appellant
contends that there is no evidence to support his conviction because the only
evidence that he had any connection with the methamphetamine was his mere
presence at the scene of the offense. 
Because we hold that the evidence is legally sufficient to support
Appellant=s
conviction, we affirm the trial court=s judgment.

Shane Norie, an investigator
for the Cooke County Sheriff=s Office at the time of the offense, testified that in the late
afternoon of January 24, 2005, he received information from  Gregg Taylor, a patrolman with Cooke County
at the time, that Appellant and Mark Workman had a possible methamphetamine lab
inside a home.  These two men were
already known to Investigator Norie.  A
civilian, Jenni Jones, who had voluntarily reported drug activity to Taylor for
several months, had sent Taylor a text message that Ashe was in a trailer with some really stinky shit@ that reminded her of cosmetology school.  Investigator Norie immediately drove to the
reported scene, Workman=s mobile
home at 1210 Parkside Circle in the community of Oak Ridge in Cooke County,
Texas. Investigator Norie arrived at the scene ten to fifteen minutes after
receiving the tip.  At some point before
he reached the scene, whether it was in the original phone call from Gregg
Taylor or in a follow-up conversation, Investigator Norie learned that odors
were coming from the residence and that Appellant and Mark Workman were inside.








When Investigator Norie
reached the residence, he could smell a very distinctive odor as he approached
the front door that, based on his experience, led him to believe that a
methamphetamine lab was inside.  He
knocked on the door, and Jenni Jones answered it.  In response to his inquiry regarding the
presence of other people in the house and their location, she directed him to
the bathroom.  As he approached the
bathroom, he saw Appellant in the doorway between the bathroom and the master
bedroom, facing the bedroom, with his hand on the bathroom door, trying to
close it.  The officer inferred that
Appellant had just exited the bathroom. 
The odor was stronger at that location. 
Through the open door of the bathroom, Investigator Norie saw coffee
filters, jars, glassware, and a bowl.  He
then concluded that there was either an actual or potential methamphetamine lab
in the bathroom.  The officer escorted
Appellant to the front door, where other officers were waiting.  Investigator Norie then got Workman, who was
nude, out of the shower, and the officers got him some clothes.








When Investigator Norie went
back to the bathroom, he saw an open glass jar containing a mixture with a
blue-tinged layer at the top and a brown layer at the bottom, solvents, a dual
burner hot plate, a metal pan containing a plastic bowl that was melted at the
bottom, some tubing, and a spoon containing white fluid.  Investigator Norie also noticed that the
carpet around where the spoon was found was mashed, as if it had been eaten
away by the chemicals.  The police also
found a coffee filter, syringes, and needles in the master bedroom, and,
elsewhere in the house, Coleman fuel, a gas mask with filters, a trash can with
a white residue on the inside of its lip, triple beam scales, rock salt, many
small baggies, pipes, and hoses.  The Texas
Department of Public Safety lab determined that more than 850 grams of liquid
methamphetamine was in the mixture from the jar.

Jenni Jones testified that
she was Workman=s friend,
that she was at his home every day or every other day, that on the day of the
incident the air outside the home Asmelled bad[,] like cosmetology,@ and that it had never smelled that way before.  She saw Appellant, whom she had not met until
that day, inside the home.  The smell was
so bad that she had to wipe her eyes. When
the police arrived, Jenni testified, Appellant said, AThe cops are here.  The cops are
here,@ acted Alike he didn=t know where to go, what way to go,@ and was Arunning back
and forth.@  He jumped over a table, went toward the
kitchen, then back towards her, and then towards Workman=s bedroom.








Officer Taylor testified that
about thirty minutes passed from the time Jenni Jones text-messaged him until
Investigator Norie reached the mobile home. 
Drug Enforcement Agent Vic Routh testified that based on his eighteen
years= experience, the smell, and the rate of separation of the chemicals,
the drugs could have been manufactured in the last two or three hours before
the police discovered the lab.

Appellant does not contest
the presence of the methamphetamine or the lab but contends that only his mere
presence connects him to the manufacture of the drugs and therefore that the
evidence is legally insufficient to support his conviction.

In a similar case, we
explained,








[F]or
the State to obtain a conviction for the manufacture of a controlled substance,
the State must affirmatively link the defendant either to an interest in the
place where the manufacturing was taking place or to the actual act of
manufacturing.  . . . [T]he requirement
of an affirmative link is designed to protect the innocent bystander from
conviction based solely upon his proximity to someone else=s
drugs.  In a manufacturing case, the
affirmative link must still be proven. 
The nature of the offense of the manufacture of methamphetamine,
however, shifts the emphasis from protecting the innocent bystander from
conviction based solely upon his proximity to someone else=s
drugs to protecting the innocent bystander who merely happens onto a
methamphetamine lab inadvertently. 
Although the affirmative links analysis is basically the same whether
the offense is the possession of a controlled substance or the manufacture of a
controlled substance, the factors considered may be different.  For example, manufacture of methamphetamine
occurs in the open.  . . . When
methamphetamine is being manufactured by [a traditional] method, there is a
strong odor, not merely a residual odor; the paraphernalia are relatively
cumbersome and clearly in plain view; and the quantity of contraband will be
relatively high.  As a consequence, the
fact that a defendant has a prolonged presence on the premises weighs more
heavily against that defendant when methamphetamine is being manufactured on
the premises.[2]

 

In Harris,
the appellant also raised a Amere presence@
argument.[3]  She

 

was
not in possession of a large amount of cash; she was not under the influence of
drugs; she had no weapon; she made no furtive gestures; her fingerprints were
not found on the premises. [She] claims that she did not attempt to flee and
that she stopped as soon as she saw Deputy Teague.

 

. . . . Officer
Teague testified that [Harris] ran out of the laundry room from the side door
of the storage building.  A very strong
odor of ether and hydrogen chloride gas came from the laundry room in the storage
building.  The pitcher and jars
containing chemicals and residue were in plain view in the laundry room.  The bag containing paperwork of [Harris] and
her daughter was on the floor of the laundry room next to the running washing
machine containing the drugs.  The
generator in the laundry room was running. 
At the same time, it appeared that somebody in the room that [Harris]
exited had attempted to destroy evidence by putting the drugs, including the
pyrex container, into the washing machine upon realizing that the officers were
on the property. [Harris] ran from the structure, and her running could be seen
as an attempt to flee.

 








In determining whether the
evidence is sufficient to link the defendant to the contraband, the trier of
fact is the exclusive judge of the credibility of the witnesses and the weight
to be given their testimony.  Applying
the appropriate standard of review, we hold that the evidence, both direct and
circumstantial, is legally sufficient to support the jury's determination that
there was a sufficient affirmative link between Appellant and the manufacture
of methamphetamine to support her guilt.[4]

Viewing the evidence in the
case before us in the light most favorable to the verdict, Jones, a frequent
visitor, had never met Appellant or smelled the odor at Workman=s home before Appellant=s arrival; Appellant remained at the home for approximately thirty
minutes at a minimum; he behaved bizarrely when he noticed that the police were
outside; and he attempted to hide the methamphetamine lab from the police by
trying to close the bathroom door.  Based
upon the appropriate standard of review,[5]
we hold that the evidence is legally sufficient to affirmatively link Appellant
to the offense and therefore support his conviction.  We overrule Appellant=s sole point and affirm the trial court=s judgment.

 

 

 








 

PER CURIAM

PANEL F:    DAUPHINOT, J.; CAYCE,
C.J.; and LIVINGSTON, J.

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: 
July 20, 2006











[1]See Tex. R.
App. P. 47.4.





[2]Harris v. State, No. 2-04-202-CR, 2005 WL 1838976,
at *1 (Tex. App.CFort Worth Aug. 04, 2005, pet. ref=d) (mem. op.) (not designated for
publication) (citations omitted).





[3]Id.





[4]Id. at *3 (citations omitted).





[5]See
Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Burden v. State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001); Dewberry
v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied,
529 U.S. 1131 (2000) (all providing legal sufficiency standard of review); see also Poindexter v. State,
153 S.W.3d 402, 406 (Tex. Crim. App. 2005); Brown v. State, 911 S.W.2d
744, 748 (Tex. Crim. App. 1995); East v. State, 722 S.W.2d 170, 171-72
(Tex. App.CFort Worth 1986, pet. ref=d) (all discussing Aaffirmative links@ rule).